**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-02895-WJM-MJW

MICHAEL McCAMMOND,

    Plaintiff,

v.

SCHWAN'S HOME SERVICE, INC.,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Michael McCammond brings this action against Defendant Schwan's Home Services, Inc. for violation of Plaintiff's employment contract with Defendant. Before the Court on Defendant Schwan's Home Service, Inc.'s Motion for Summary Judgment (the "Motion"). (ECF No. 32.) The Court held oral argument on the Motion on June 14, 2011.

For the reasons set forth below, the Motion is DENIED.

### I. LEGAL STANDARD

In a case such as this where the plaintiff asserts state law claims and the federal court has jurisdiction based on the diversity of the parties, "a federal court applies the substantive law of the state, but applies federal procedural law." *Herrera v. Lufkin Ind., Inc.*, 474 F.3d 675, 683 (10th Cir. 2007). Federal Rule of Civil Procedure 56 provides that summary judgment is warranted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). By contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).

The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## II. FACTUAL BACKGROUND

Plaintiff Michael McCammond started his employment with Defendant Schwan's Home Services in 1979. That year, Plaintiff signed a twelve-month Contract of Employment which renewed annually. (ECF No. 32-1 at 33-40.) The termination provision of the Employment Contract states:

> In addition to Employer's right to discharge Employee for cause, which includes but is not limited to the fact that Employee has shortages in his accounts, uses intoxicating liquors while on the job, conducts himself immorally while on the job, or through his own fault is involved in an accident with Employer's equipment, which right is acknowledged by Employee, Employee's employment under this contract may be voluntarily terminated by either party upon two-week's notice to the other given personally or by registered or certified mail.

(ECF No. 32-1 at 37.)

The key issue in this case is whether Plaintiff was terminated for cause. It is undisputed that Plaintiff did not report for work on December 22-23, 2008. Plaintiff contends that he was on an authorized vacation; Defendant disputes that fact. Plaintiff was terminated when he failed to report to work on December 23, 2008.

The following facts appear to be substantially undisputed[1]: On December 22, 2008, Brian Cowell, Plaintiff's supervisor, called him and told him to report to work immediately. Plaintiff informed Cowell that he was in Nebraska so getting to work that day was impossible. Plaintiff reminded Cowell that he was on vacation and told him that there was no way Plaintiff was coming back to work. Cowell responded that Plaintiff was to be at work on December 23, 2008 or he would be fired. Plaintiff then hung up on Cowell. (ECF No. 32-1 at 10-11.)

Cowell called Plaintiff back and asked if Plaintiff had hung up on him. Plaintiff replied that he had hung up because Cowell was yelling at him. Cowell asked if Plaintiff was going to report to work on the 22nd or the 23rd. Plaintiff responded that he was

---

[1] To the extent there is a dispute, the Court construes the facts in the light most favorable to the Plaintiff.

not reporting to work because he was on vacation. Cowell again told Plaintiff that if he did not come to work, he would be fired. (*Id*. at 11.) Plaintiff did not report to work on December 23, 2008.

Defendant terminated Plaintiff's employment by letter dated December 23, 2008 that stated:

> This letter is to inform you that you have been terminated from your employment at Schwan's Home Service, Inc., effective December 23, 2008 for insubordination.
>
> You refused to work on December 22 and 23, 2008 as scheduled. You have also repeatedly informed your management team that you will refuse to work a five day schedule as required by the salary + commission compensation program for Customer Service Managers who are under $5,850.00 per week in sales.
>
> This conduct is not acceptable and violates Standards of conduct listed in the employee handbook as follows:
>
> # 1 – General
> # 10 – Insubordination
> # 20 – Attendance
> # 26 – Conflicts of Interest[2]

(ECF No. 32-1 at 42.)

Plaintiff brought the instant action on December 10, 2009. Plaintiff alleges that but for his termination, he would have worked for Defendant until he was 65—seven more years. As damages, Plaintiff seeks seven years lost income, and lost fringe benefits of medical insurance, life insurance, 401(k) retirement and social security

---

[2] The parties have not provided the Court with a copy of the Employee Handbook. Accordingly, there is no evidence in the record regarding the meaning of any of these terms or what Defendant's Standards of Conduct were with respect to attendance, insubordination or conflicts of interest.

benefits. (ECF No. 1-2.)

### III. DISCUSSION

Plaintiff's Complaint brings four causes of action: (1) breach of employment contract; (2) wrongful termination; (3) breach of the duty of good faith and fair dealing; and (4) termination without good cause. (Compl. (ECF No. 1) p. 5.) Defendant moves for summary judgment as to all four claims. (Mot. for Summ. J. (ECF No. 32) p. 14.)

In his Opposition to the Motion, Plaintiff admits that the first, second,[3] and fourth causes of action are based on the same facts and elements. Therefore, the Court will substantively address only two claims: (1) Plaintiff's claim that Defendant wrongfully terminated him in breach of his employment contract; and (2) Plaintiff's claim that Defendant violated its duty of good faith and fair dealing.

### A.    Choice of Law

As an initial matter, the Court must determine what law applies to Plaintiff's claims. A federal court sitting in diversity must apply the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, the Court must look to Colorado law to determine which state's laws should be applied.

The Employment Contract at issue here provides that it "shall be interpreted and construed according to the laws of the State of Minnesota." (ECF No. 32-1 at 39.) In

---

[3] Plaintiff specifically states that he is not pursuing a tort claim for wrongful termination. *See* ECF No. 33 ("The claim for wrongful termination is based upon the same evidence and the same elements as the breach of contract. There is no tort claim intended or being pursued.") At oral argument, counsel reiterated that Plaintiff was not pursuing a tort claim from wrongful termination.

Colorado, "[i]t is undisputed that such a choice of law provision is enforceable." *URS Group, Inc. v. Tetra Tech FW, Inc.*, 181 P.3d 380, 384 (Colo. App. 2008); *see also Vulcan Power Co. v. Munson*, __ P.3d __, 2011 WL 322529, *3 (Colo. App. Feb. 3, 2011) ("Pursuant to the choice of law provision in . . . employment contract, we apply Oregon law here."); *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 490 (Colo. App. 1997). Accordingly, the Court will apply Minnesota substantive law to Plaintiff's claims in this case.

**B.    Duty of Good Faith and Fair Dealing**

It is undisputed that the Employment Contract at issue here does not contain an express provision regarding the duty to deal in good faith. Minnesota courts do not recognize a separate cause of action arising out of an implied covenant of good faith and fair dealing in the employment context.[4] *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 858 (Min. 1986) ("[W]e have not read an implied covenant of good faith and fair dealing into employment contracts."); *Minnwest Bank Central v. Flagship Properties, LLC*, 689 N.W.2d 295, 303 n.5 (Minn. App. 2004) ("The implied covenant of good faith and fair dealing does not apply to sales contracts or to employment contracts."*); Lee v. Metropolitan Airport Comm'n*, 428 N.W.2d 815, 822 (Minn. App. 1988) ("courts have not read an implied covenant of good faith and fair dealing into employment contracts.").

---

[4] Colorado courts similarly do not recognize a cause of action for breach of an implied duty of good faith and fair dealing in an employment contract. *See Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1385 (Colo. App. 1986) (declining to extend duty of good faith and fair dealing to at-will employment contracts).

However, as discussed below, because the Employment Contract provides that Plaintiff can only be terminated for cause, the issue of good faith comes into play in determining whether Plaintiff's termination was a breach of contract. Thus, it appears that Plaintiff's third cause of action—alleging breach of the duty of good faith and fair dealing—is not a separate cause of action; rather it is subsumed by into his breach of contract claim.

**C.     Breach of Express Employment Contract**

In Minnesota, "[a] claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. App. 2008), review denied (Minn. Jan. 20, 2009).

For purposes of the instant Motion,[5] the parties do not dispute that, in 1979, they entered into a twelve-month Contract of Employment that renewed annually and was in effect at the time of Plaintiff's termination. The parties also agree that the contract at issue here allowed for Plaintiff's termination "for cause." (Def.'s Mot. for Summ. J. (ECF No. 32) ¶ 12 ("Pursuant to the terms of Plaintiff's Employment Contract, Home Service had the option to terminate Plaintiff's Employment for cause.").) Defendant argues that Plaintiff has not shown a trial-worthy issue as to whether he was terminated for cause

---

[5] Defendant states that it "admits the existence of a contract" "[s]olely for the purpose of this Motion for Summary Judgment." (ECF No. 32 at 9 n.2.)

and, therefore, summary judgment is appropriate.[6] (ECF No. 32 at 9.)

At oral argument, defense counsel conceded that if the only issue in this case was whether Plaintiff was authorized to take vacation on December 22-23, 2008, then there is a factual dispute that would preclude summary judgment. However, Defendant contends, both in its Motion and again at oral argument, that summary judgment is appropriate in this case because regardless of whether Plaintiff was authorized to take vacation, he disobeyed a direct order of his supervisor when he refused to return from his vacation and report for work on December 23, 2008. Defendant contends that Plaintiff was terminated for cause based on this insubordination. Therefore, the Court must determine if there is a trial-worthy issue as to whether Plaintiff's failure to report to work on December 23, 2008 was insubordination that justified his termination for cause.

The Employment Contract sets forth specific actions that constitute good cause for termination: "Employee has shortages in his accounts, uses intoxicating liquors while on the job, conducts himself immorally while on the job, or through his own fault is involved in an accident with Employer's equipment." (ECF No. 32-1 at 37.) None of these provisions applies here. However, the list of actions is not exclusive, so the Court must look generally to how Minnesota defines "good cause" in the employment termination context.

In Minnesota, the terms "good cause", "just cause", and "cause" are used interchangeably in the employment contract context. *Hilligoss v. Cargill, Inc.*, 649

---

[6] Because the parties briefed this issue under Colorado law, their arguments do not track the Minnesota breach of contract analysis. The Court has attempted to conform the essence of their arguments to the Minnesota standard.

N.W.2d 142, 148 (Minn. 2002). The Minnesota Supreme Court[7] has approved of the following jury instruction regarding "good cause" for terminating an employee:

> The term "cause" generally means a real cause or basis for dismissal as distinguished from an arbitrary whim or caprice. That is, some cause or ground that a reasonable employer, acting in good faith in similar circumstances would regard as a good and sufficient basis for terminating the services of an employee. A termination is for cause if Plaintiff breached the . . . standards of job performance that the Defendant established and uniformly applied. It is up to you to decide whether [Plaintiff's] employment with [Defendant] was terminated for cause.

*See Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 146-47 (Minn. 2002).

In Minnesota, the question of whether an employee's termination was for "good cause" is typically a question for the jury.[8] *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 631 (Minn. 1983) (where there was conflicting evidence regarding the employee's work performance, whether employee's termination was for cause was a question for the jury) (citing favorably *Toussaint v. Blue Cross & Blue Shield of*

---

[7] Colorado courts have apparently not defined what constitutes "good cause" or "just cause" when an employment contract fails to define those terms. *See* Colo. Jury Instructions–Civil § 31:6 (noting that there is "an absence of Colorado appellate decisions defining 'good or just cause'").

[8] Colorado courts have also held that the jury should resolve factual disputes surrounding whether an employee was terminated for good or just cause. *See, e.g., Adams v. Frontier Airlines Federal Credit Union*, 691 P.2d 352, 354 (Colo. App. 984) (where employer terminated employee for incompetence, "the ultimate determination of whether [the employee's] performance was incompetent was a question of fact to be determined by the trier of fact"); *Vanderhurst v. Colorado Mountain College Dist.*, 16 F.Supp.2d 1297, 1304 (D. Colo. 1998) (applying Colorado law and holding that whether employer violated its employment policies in terminating plaintiff was question of fact for the jury); *Cronk v. Intermountain Rural Elec. Ass'n*, 1992 WL 161811, *2 (Colo. App. April 2, 1992). Also relevant to the facts of this case, Colorado courts have held that the reasonableness of an employer's directive is a question of fact for the jury to determine based on the circumstances in a particular case. *Magnuson v. Smith and Saetveit, P.C.*, 722 P.2d 1020, 1022 (Colo. App. 1986).

*Michigan*, 292 N.W.2d 880, 895 (Mich. 1980) ("The jury as trier of facts decides whether the employee was, in fact, discharged for unsatisfactory work."); *Lewis v. Equitable Life Assur. Soc. Of the U.S.*, 389 N.W.2d 876, 884 (Minn. 1986) (whether employer followed termination provisions in employment contract was question for the jury).

Defendant argues that the Court should focus solely on the following undisputed facts: (1) Plaintiff was ordered by his supervisor to return to work on December 22, 2008; (2) because Plaintiff was in Nebraska, it was physically possible for him to report to work on December 23, 2008; and (3) Plaintiff did not report to work on December 23, 2008. (ECF No. 32 at 6-7.) Because these facts are not disputed, Defendant argues that there is no trial-worthy issue as to whether Plaintiff was insubordinate and, therefore, no trial-worthy issue as to whether there was good cause for his termination.

The Court agrees that these facts are undisputed; however, it does not agree that the inquiry here should focus on these facts to the exclusion of all of the other material facts present in this case. As the legal standard set forth above makes clear, the inquiry into whether an employee's termination was "for cause" is more contextual and nuanced than the narrow examination of the operative facts Defendant would have this Court undertake.

With respect to whether Plaintiff was insubordinate by failing to return from vacation and report to work on December 23, 2008, Defendant has presented no evidence showing that Plaintiff's actions breached uniformly applied job standards. Defendant has come forward with no evidence showing how its policies or practices defined insubordination, or provided examples of when other employees had been

terminated for insubordination in similar or even disparate circumstances.

There is no evidence in the record that Plaintiff's job required him to be able to return to work on one day's notice when he was on an approved vacation. At argument, defense counsel asserted that flexibility is key to the position held by Plaintiff but admitted that there was no evidence in the record on this point and that it was not briefed by the parties in connection with the instant Motion.

There is also no evidence in the record showing that any other employee had previously been ordered to return from vacation early at the request of his or her supervisor. At argument, defense counsel admitted that he knew of no such prior circumstance. One could easily question if Defendant would have considered it insubordination if—at the request of his supervisor on one day's notice—Plaintiff had refused to return from his vacation in Europe rather than Nebraska. The Court has no evidence before it indicating that Defendant's vacation policies allow it to dictate where an employee spends his authorized time away from work.

Given the disputed facts surrounding whether Plaintiff was authorized to take vacation on December 22-23, 2008, coupled with the lack of evidence showing that Plaintiff's conduct in this case constituted insubordination under Defendant's uniformly applied policies and procedures, the Court finds that there is a trial-worthy issue as to whether Plaintiff was terminated for cause and that such issue must be resolved by a jury.[9]

---

[9] Because the law governing termination for good cause is substantially similar in Colorado and Minnesota, the Court's ruling would have been the same if it had applied Colorado law.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED.  This case will proceed to trial on Plaintiff's breach of express contract claim.[10]

Dated this 16th day of June, 2011.

BY THE COURT:

William J. Martinez
United States District Judge

---

[10] The parties should reference and utilize Minnesota substantive law when preparing jury instructions and otherwise proceeding with the remaining aspects of this case.