**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-02895-WJM-MJW

MICHAEL McCAMMOND,

    Plaintiff,

v.

SCHWAN'S HOME SERVICE, INC.,

    Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE REGARDING WHETHER PLAINTIFF'S DAMAGES AWARD SHOULD BE OFFSET BY DEFENDANT'S CONTRIBUTION TO THE STATE UNEMPLOYMENT FUND**

---

    Plaintiff Michael McCammond brings this action against Defendant Schwan's Home Services, Inc. for violation of Plaintiff's employment contract with Defendant. Before the Court is Plaintiff's Motion in Limine seeking to exclude any reference to the amount of unemployment benefits received by Plaintiff. (ECF No. 43.) The Court held oral argument on the Motion on June 14, 2011.

    Defendant seeks to offset any award of damages to Plaintiff after the trial of this matter by the amount that it contributed to Plaintiff's award of unemployment benefits. To that end, Defendant would seek to admit as evidence the amount of unemployment benefits Plaintiff received and what percentage of that amount was paid by Defendant. For the reasons set forth below, Plaintiff's Motion in Limine is GRANTED.

## I.  CHOICE OF LAW

The admissibility of evidence in diversity cases in federal court is generally governed by federal law.  *Romine v. Parman*, 831 F.2d 944 (10th Cir.1987). "Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called 'substantive' state rules of evidence, such as the parol evidence rule, the collateral source rule, or the statute of frauds; although the application of these rules will affect the admissibility of some evidence, they in reality serve substantive state policies regulating private transactions."  *Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998); *see also* 19 Wright, Miller & Cooper, Federal Practice and Procedure  § 4512 at 422-24.

Because the instant Motion involves application of the collateral source rule, the Court must apply the relevant state law.  A federal court sitting in diversity jurisdiction generally applies the substantive law of the forum state, which in this case is Colorado. *Herrera v. Lufkin Ind., Inc.*, 474 F.3d 675, 683 (10th Cir. 2007).  Although the Employment Contract at issue here provides that it "shall be interpreted and construed according to the laws of the State of Minnesota" (ECF No. 32-1 at 39), the instant Motion does not involve interpretation or construction of the Contract.  As such, the choice of law provision does not apply and the Court will apply Colorado law.[1]  *See*

---

[1] The Court notes that the Motion was briefed pursuant to Colorado law and, at the hearing on the Motion, neither party argued that Minnesota law applies to this issue. Accordingly, any right to assert Minnesota law was arguably waived by the parties. *See Air Liquide America Corp. v. Continental Cas. Co.*, 217 F.3d 1272, 1275 n.2 (10th Cir. 2000) (collecting cases on waiver of choice of law provision when issue not raised by parties before district court).

*Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*, 924 F.Supp. 1270, 1272 (D. Kan. 1996) (interpreting a similar choice of law provision that stated a contract should be "interpreted and construed" under a certain jurisdiction's law as "narrowly drawn" and finding that it that did not apply to whether plaintiff was entitled to certain damages for its breach of contract claim); *see also Cagle v. The James Street Group*, 400 F. App'x 348, 356-57 (10th Cir. 2010) (disregarding choice of law provision where issue before the court fell outside the scope of the choice of law provision in the contract).

## II.  ANALYSIS

Colorado's collateral source rule provides that recoverable damages are not diminished because the injured party has been wholly or partially indemnified or compensated for his loss by insurance effected by him and to which the wrongdoer did not contribute. *Powell v. Brady*, 496 P.2d 328 (1972), *aff'd*, 181 Colo. 218, 508 P.2d 1254 (1973).  The collateral source rule is often identified with tort cases; however, the common law collateral source rule is equally applicable to contract actions.  *See Coleman v. United Fire & Casualty Co.*, 767 P.2d 761 (Colo. App. 1988).

Defendant argues that Colorado case law draws a distinction between offsets from sources to which the Defendant has not contributed and those to which the Defendant has contributed.  Defendant argues that because it actually contributed to the unemployment fund on behalf of Plaintiff, the percentage of Plaintiff's unemployment award that it paid should be used to offset Plaintiff's recovery in this case.

Defendant's argument has been rejected by the Colorado courts.  The Colorado

Court of Appeals has refused to apply the collateral source rule to gratuitous benefits received by plaintiffs from governmental sources. *Gomez v. Black*, 511 P.2d 531 (1973). With respect to unemployment benefits, it has held: "Although unemployment compensation benefits are not wholly gratuitous, neither are they a direct benefit from the employer. Rather, they are benefits received from a collateral governmental source." *Technical Computer Servs. v. Buckley*, 844 P.2d 1249, 1254 (Colo. App. 1992). Therefore, "in an action for damages for breach of an employment contract, unemployment compensation benefits are not deductible by the employer in mitigation of damages." *Id*. at 1254-55; *see also National Labor Relations Board v. Gullett Gin Co.*, 340 U.S. 361 (1951) (unemployment benefits were collateral because the payments to the employees were not made to discharge any liability or obligation of employer, but to carry out a policy of social betterment for the benefit of the entire state).

   Defendant relies on *Yeiser v. Ferrellgas, Inc.*, 214 P.3d 458 (Colo. App. 2008), to support its argument that a percentage of the amount it paid into the unemployment insurance fund should be used to offset any recovery by Plaintiff in this case. However, *Yeiser* does not overrule *Buckley* and is distinguishable from the facts at issue here. In *Yeiser*, the plaintiff suffered damage to her home as a result of defendant's actions. Plaintiff's insurance company paid her $212,071.94 on her homeowner's policy. The insurance company then sought subrogation from the defendant in the amount of $212,071.94 but settled with defendant for $172,657.55. The trial court offset the jury's award of damages by the amount defendant actually contributed to the insurance

company via its settlement on the insurance company's subrogation claim. *Yeiser*, 214 P.3d at 461-62.

The Court of Appeals affirmed. It held that the collateral source rule did not preclude a setoff because, although the plaintiff had received payment from her insurance company rather than the defendant directly, the insurer had a subrogation claim that entitled it to be reimbursed by defendant. When the insurer was actually reimbursed by the defendant on the subrogation claim, that payment became a direct contribution from defendant to the funds paid to plaintiff. Thus, the jury's damage award was properly offset by the amount defendant had already paid to the insurer. *Id*. at 461.[2]

In so holding, the Court of Appeals recognized that "this is not a case in which plaintiff's compensation was 'wholly independent of the wrongdoer and to which the wrongdoer has not contributed.'" *Yeiser*, 214 P.3d at 461 (quoting *Kistler v. Halsey*, 481 P.2d 722, 724 (Colo. 1971)). On appeal, the Colorado Supreme Court noted that its holding in this case turned on the relationship between the plaintiff, defendant, and the insurance company as a result of the law of subrogation in the context of insurance. Therefore, contrary to Defendant's assertion, *Yeiser* was not meant to extend beyond the insurance subrogation context and certainly does not overrule *Buckley*.

---

[2] The Court of Appeals held that the jury's award was only offset by the amount defendant paid via settlement on the subrogation award—$172,657.55—rather than the amount that the insurer had paid to the plaintiff on the homeowner's policy. The Colorado Supreme Court reversed this finding and held that the award should be offset by the entire amount paid by the insurance company. *Ferrellgas, Inc. v. Yeiser*, 247 P.3d 1022, 1030 (Colo. 2011). Though it reversed on this finding, it did not alter the Court of Appeals reasoning set out above with respect to the offset of the jury's award based on defendant's subrogation payment to the insurer.

In this case, Plaintiff's unemployment benefits were paid by Colorado's unemployment fund. Though it paid benefits to Plaintiff after he was terminated by Defendant, the unemployment fund does not have a subrogation claim against Defendant for the amount of benefits it paid to Plaintiff. The unemployment fund is a governmental entity to which all employers are required to contribute by law. *See Buckley*, 844 P.2d at 1254 (noting that all employers must pay taxes for unemployment compensation under Colo. Rev. Stat. § 8-76-101, *et seq.*). Defendant did not have to make a special payment into the fund because Plaintiff was awarded benefits. Accordingly, under Colorado law, Plaintiff's recovery should not be offset by any amount he received in benefits from the unemployment compensation fund.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion in Limine is GRANTED. The Court will not allow Defendant to argue at trial that Plaintiff's award of damages, if any, should be offset by any amount Defendant contributed to the unemployment insurance fund.

Dated this 16th day of June, 2011.

BY THE COURT:

_____
William J. Martinez
United States District Judge